473 A.2d 577

**COMMONWEALTH of Pennsylvania**

v.

**John Elwood KEARSE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1983.

Filed March 2, 1984.

2

John G. Bergdoll, III, York, for appellant.

Floyd Paul Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before McEWEN, JOHNSON and POPOVICH, JJ.

McEWEN, Judge:

After a jury had by verdict determined that appellant was guilty of robbery and trial counsel had filed post-verdict motions, the trial court, upon the *pro se* petition of appellant, appointed new counsel who filed amended motions for a new trial and in arrest of judgment which included allegations of ineffectiveness of trial counsel. Following the denial of these motions, appellant was sentenced to a term of imprisonment of from four and one-half years to nine years. This direct appeal followed. We affirm.

Appellant contends that (1) the evidence was insufficient to sustain the conviction; (2) the trial court erred in refusing to charge the jury that they could find appellant guilty of theft only; and (3) the trial court erred in ruling that a prior conviction could be used to impeach his credibility. Appellant also contends that trial counsel was ineffective for (1) failing to file pre-trial motions to suppress identification evidence; (2) failing to request a pre-trial line-up; and (3) failing to object when an expert witness allegedly testified beyond the scope of his expertise. The distinguished Judge John F. Rauhauser, Jr., in his opinion denying the post-trial motions, has so ably discussed these claims of error that we only address the contention that the trial court erred in ruling that the prior conviction of appellant in 1976 was admissible to impeach his credibility.

Rutter's Farm Store, located in York, Pennsylvania, was robbed on the afternoon of July 13, 1981. The manager of the store testified that the robbery was perpetrated by a black male who approached the register area, placed a bag of Purina dog food on the counter and grabbed him from behind, holding what seemed to be a gun against his back.[1] When the robber ordered the manager to remove the cash from the register, he handed approximately $89.00 to his assailant, who then fled on foot. The Commonwealth produced testimony from a Pennsylvania State Police Trooper that a number of fingerprints found on the dog food bag

1. The trial court granted the demurrer of appellant to the charge of crimes committed with a firearm.

that had been left on the counter belonged to appellant.[2] Although the store manager was unable to positively identify appellant from an array of eight photographs, he was able to identify appellant at both the preliminary hearing and at trial.

Appellant defended by the presentation of an alibi defense. Two defense witnesses, a roommate and another acquaintance of appellant, testified that appellant was home sick one day in July, but neither witness was able to recall the exact date of that illness. The acquaintance, although unable to state with certainty if the afternoon he spent with appellant was July 13, 1981, testified that he had visited appellant on the day that he was ill and had spent the major portion of the afternoon with appellant. Appellant, himself, testified that he had been home sick on the afternoon of the robbery and that he had not only purchased dog food two days prior to the robbery from Rutter's Farm Store, but had also on that occasion handled a number of bags on the shelf. Appellant further stated on direct examination that he recalled the date of his illness and knew it to be July 13, 1981, the date of the robbery. It was not until after the assistant district attorney had cross examined appellant upon his alibi, his illness and his explanation of the presence of his fingerprints on the dog food bag that defense counsel requested at side bar a determination of whether the Commonwealth could on rebuttal introduce evidence of the prior conviction of appellant. After the presentation of argument by both counsel on the admissibility of the prior conviction for the limited "purpose of questioning the credibility of [appellant] as a witness", the trial judge ruled:

[I]t seems to me that the question of credibility is one of particular importance.... [T]he defendant does have witnesses and did produce them and, really, the only witness the Commonwealth has here is the identification of the eyewitness who was the victim of this particular

2. The manager of the store testified that Purina dog food was a popular item which sold quickly and was reordered approximately once a week.

incident and his testimony on cross examination has been attacked as to credibility and reliability.

Therefore, under all the circumstances, the court will permit the introduction of this record as has been identified for the sole purpose of questioning the credibility and we will give appropriate instructions to the jury to that effect. (N.T. 93–94).

The Commonwealth did not, however, resort to the introduction of rebuttal evidence of the prior conviction since the ruling caused defense counsel to undertake the redirect examination of appellant which included the following interrogation [3]:

Q. Back in 1976, do you remember pleading guilty to something?

A. Yes.

Q. That was robbery.

A. Yes. They had it down to theft.

Q. You pled guilty?

A. Yes.

Q. You stood in front of the Court and told them that you were wrong?

A. Yes.

Q. You served your time?

A. Yes.

Q. And, that was for burglary as well. Is that right?

A. Yes.

Q. And you admitted you were wrong at that time?

A. Yes.

(N.T. 97).

3. Our holding focuses upon the ruling of the trial judge that introduction of the record be permitted and is not affected by the fact that the introduction was undertaken by the defense. That effort by trial counsel would appear to be a considered trial tactic and, under all of the circumstances of this case, would not appear subject to question. See Commonwealth v. Toomey, 321 Pa.Super. 281, 286–287, 468 A.2d 479, 482 (1983).

Appellant argues that the trial court committed reversible error in admitting his prior conviction for impeachment purposes since (1) he was the only witness who could provide testimony necessary to establish his alibi defense; (2) the Commonwealth could and did impeach his testimony with a prior inconsistent statement [4]; (3) the case of the Commonwealth against appellant was substantial; and (4) the prior conviction was for the same crime and highly prejudicial.

 The admissibility of evidence of prior convictions for the impeachment of a defendant-witness is within the sound discretion of the trial judge, whose decision thereon will not be reversed absent an abuse of discretion. *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Canada*, 308 Pa.Super. 494, 454 A.2d 643 (1983); *Commonwealth v. Williams*, 273 Pa.Super. 389, 417 A.2d 704 (1980). The exercise of this discretion requires the trial judge to determine whether the probative value of the evidence of other convictions as it bears upon the credibility of an accused as a witness outweighs the prejudicial effect that such evidence has upon the jury. *Commonwealth v. Roots, supra* 482 Pa. at 41, 393 A.2d at 368; *Commonwealth v. Bighum*, 452 Pa. 554, 565 n. 7, 307 A.2d 255, 262 n. 7 (1973); *Commonwealth v. Williams, supra* 273 Pa.Super. at 393, 417 A.2d at 706. When the court engages in a proper counterbalancing of the competing considerations in this determination, it is of "critical importance" that the evidence be excluded when it appears that "it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." *Commonwealth v. Bighum, supra* 452 Pa. at 567, 307 A.2d at 263.

**4.** The Commonwealth, in rebuttal, presented testimony from two police detectives that appellant had stated "that he had not been in Rutter's Farm [S]tore for five to ten months previously [sic] to [the time of the robbery]." The detectives further testified that appellant, even after being advised of the fingerprint evidence, "denied being in the store."

■ The eminent, now Pennsylvania Supreme Court Chief Justice Robert N.C. Nix, Jr., in *Commonwealth v. Roots, supra,* articulated a "balancing equation" which includes five basic considerations that should be weighed in the determination of whether to admit evidence of prior convictions for impeachment purposes:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Id.* 482 Pa. at 39–40, 393 A.2d at 367 (footnote omitted). *Accord Commonwealth v. Henderson,* 497 Pa. 23, 35, 438 A.2d 951, 957 (1981); *Commonwealth v. Bighum, supra* 452 Pa. at 557, 307 A.2d at 263; *Commonwealth v. Zabala,* 310 Pa.Super. 301, 319–20, 456 A.2d 622, 631 (1983); *Commonwealth v. Williams, supra* 373 Pa.Super. at 392, 417 A.2d at 705. "These factors were designed to limit the admission of this type of evidence to situations where its introduction was of essential evidentiary value to the prosecution and not unreasonably unfair to the defense." *Commonwealth v. Roots, supra* 482 Pa. at 39, 393 A.2d at 367. *See also Commonwealth v. Canada, supra* 308 Pa.Super. at 496, 454 A.2d at 644. The burden of proof, of course, is upon the Commonwealth to show that the need for this evidence overcomes its inherent potential for prejudice. *Commonwealth v. Roots, supra* 482 Pa. at 41, 393 A.2d at

368; *Commonwealth v. Williams, supra* 373 Pa.Super. at 392, 417 A.2d at 705.

■ The first of the *Roots* criteria—that the prior conviction reflect upon the veracity of appellant as a witness—is positive for admission since the conviction involved was undeniably crimen falsi. *Commonwealth v. Henderson, supra* 497 Pa. at 35, 438 A.2d at 957; *Commonwealth v. Zabala, supra* 310 Pa.Super. at 320, 456 A.2d at 632.

The nature and extent of the prior record of appellant was not such that it would have had a greater tendency to smear the character of appellant and suggest his propensity to commit the crime with which he had been charged than to provide a legitimate reason for discrediting him as an untruthful person. *See Commonwealth v. Henderson, supra* 497 Pa. at 35, 438 A.2d at 957; *Commonwealth v. Gonce,* 320 Pa.Super. 19, 33–34, 466 A.2d 1039, 1047 (1983); *Commonwealth v. Zabala, supra* 310 Pa.Super. at 320, 456 A.2d at 632. There was but a single prior conviction here introduced and the credibility of appellant was clearly a significant issue for the jury to decide. It appears, therefore, that the second of the *Roots* considerations has been satisfied.

As for the third factor that the trial court consider "the age and circumstances of the defendant", the record demonstrates that the trial judge considered the fact that appellant was twenty years of age at the time of the commission of the prior crime, as well as the fact that appellant had then pleaded guilty. Appellant was thus of an adult age and the relevance of the impeachment evidence was not attenuated by age. *See Commonwealth v. Henderson,* supra 497 Pa. at 36, 438 A.2d at 957; *Commonwealth v. Zabala, supra* 310 Pa.Super. at 321, 456 A.2d at 632.

When we study the fourth of the *Roots* considerations, we must balance "the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surround-

ing the incident can be presented." The Commonwealth here sought to establish its case by the testimony of the only eyewitness, the store manager, and by the introduction of the evidence of the fingerprints of appellant taken from the dog food bag. Defense counsel employed vigorous cross examination to demonstrate that the store manager was unable to identify appellant prior to the preliminary hearing and to show that since certain of the prints on the dog food bag were smeared and, therefore, not traceable, the bag could have been handled by someone after appellant. The defense, on the other hand, called two witnesses in an attempt to establish an alibi, and when they were unable to supply a date certain, appellant, himself, supplied the missing testimony, namely, the date of the robbery was the day he was ill and was with the alibi witnesses. While it is true that appellant had no other means of adequately presenting the alibi defense other than by taking the stand himself, the Commonwealth could not produce any witness other than the store manager to positively identify appellant and to testify as to his presence at and participation in the robbery. Moreover, since appellant was not apprehended in the actual commission of the robbery, the fact that his prints were found upon the dog food bag did not directly establish his complicity in the crime, but only circumstantially placed him at the scene of the offense. *See Commonwealth v. Zabala, supra* 310 Pa.Super. at 320–21, 456 A.2d at 632. We are of a mind that the balance of the strength of this case does not weigh in favor of the Commonwealth and that, therefore, the need to present the impeachment evidence, when compared to the availability to the defense of other witnesses, "was of essential evidentiary value to the prosecution and not unreasonably unfair to the defense." *Commonwealth v. Roots, supra* 482 Pa. at 39, 393 A.2d at 367. *See also Commonwealth v. Henderson, supra* 497 Pa. at 35, 438 A.2d at 957; *Commonwealth v. Gonce, supra* 320 Pa.Super. at 33–35, 466 A.2d at 1047; *Commonwealth v. Zabala, supra* 310 Pa.Super. at 321, 456

A.2d at 632; *Commonwealth v. Kaster*, 300 Pa.Super. 174, 179, 446 A.2d 286, 289 (1982).

Nor does the fifth *Roots* consideration, "the existence of alternative means of attacking the defendant's credibility", warrant the exclusion of the evidence of the prior conviction. While it is true that the Commonwealth did possess other methods of attacking the credibility of appellant with regard to his explanation as to the presence of his fingerprints upon the dog food bag [5], the Commonwealth did not have an alternative means of directly impeaching the credibility of appellant, or of cross examining him upon the presentation of his alibi defense. The Commonwealth thus lacked an adequate alternative means to present a straightforward challenge to the veracity of appellant as a witness. *Commonwealth v. Henderson, supra* 497 Pa. at 36, 438 A.2d at 957; *Commonwealth v. Toomey, supra* 321 Pa.Super. at 290–291, 468 A.2d at 484 (1983); *Commonwealth v. Zabala, supra* 310 Pa.Super. at 321, 456 A.2d at 632; *Commonwealth v. Kaster, supra* 300 Pa.Super. at 179, 446 A.2d at 289. The trial judge "could reasonably have concluded that the balance of the Commonwealth's need for the evidence and its prejudice to appellant weighed more heavily in favor of the Commonwealth", *Commonwealth v. Gonce, supra* 320 Pa.Super. 19, 466 A.2d at 1039, and we are, therefore, unwilling to determine that the trial judge erred.

We reject the assertion of appellant that *Williams, supra* is controlling, since it is our view that *Williams* is readily distinguishable from the instant case. In *Williams*, the trial judge ruled that in the event the accused offered testimony, the prosecutor could attack his credibility through the introduction of his four prior robbery convictions, even though those convictions had occurred more than eight years earlier. As a result of the ruling, the accused did not take the stand to "offer a general denial that he had robbed the [victims] or had ever seen them." *Id.* 373 Pa.Super. at 391, 417 A.2d at 705. The fine opinion

5. *See* note 4 *supra.*

of our learned colleague Judge Donald E. Wieand, after describing the question as a "close one", noted that the four prior convictions were from eight to ten years old, that the number of the convictions similar to the crime for which he was being tried would have tended to smear his character and that since a general denial was the sole defense to the identification of appellant by three eyewitnesses, the testimony of the defendant himself was important. As a result, this court there held that the decision to permit the introduction of those four convictions was an abuse of discretion. The case we here consider involves but a single prior conviction obtained some five years earlier. Thus, the prior record in this case did not reflect a series of crimes as in *Williams,* nor was it nearly as remote as the prior record there considered. Moreover, the accused in *Williams* was the only witness who could have supplied the defense of general denial, whereas appellant here provided an alibi defense and presented two witnesses to support that defense. Finally, the Commonwealth was able to rely upon the testimony of three eyewitnesses to the crime in *Williams,* whereas in this case, the only eyewitness was the store manager who was unable to identify appellant from a photo array. It seems certain, therefore, that *Williams* is not binding precedent for our disposition of this appeal.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

The majority today has emasculated *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978) and *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) since the prosecution, in this writer's view, has not shown "that the need for this evidence[, appellant's prior conviction,] overc[ame] its inherent potential for prejudice." *Commonwealth v. Roots, Id.* 482 Pa. at 41, 393 A.2d at 368.

After considering the "balancing equation" which should be weighed in determining whether to admit the prior conviction, this writer finds that at least three of the five factors weigh in the appellant's favor.

However, the key considerations which lead me to conclude that the prior conviction should not be admitted are that the prosecution's case was sufficiently strong and that the prosecution had alternate means of attacking the appellant's credibility.

First of all, the prosecution had direct evidence (i.e., an eyewitness) and circumstantial evidence (i.e., fingerprints) to establish appellant's involvement in the robbery. The fact that the store manager could not identify the appellant positively from an array of eight photographs, but subsequently did identify the appellant at the preliminary hearing and at trial, only affects the *weight* and not the admissibility of the evidence. *Commonwealth v. Floyd*, 494 Pa. 537, 544, 431 A.2d 984, 988 (1981).

Second, appellant here was the only witness who, if believed, could have provided his alibi defense. On the one hand, the majority concedes that "appellant had no other means of adequately presenting the alibi defense other than by taking the stand himself", opinion at 9; however, nonetheless, the majority later improperly refers to the two witnesses who were unable to state the date that they were with appellant as "alibi witnesses." *Id.* However, even if the *jury* had believed the testimony of the two witnesses, an alibi defense would not have been established.

Our Supreme Court has described an alibi as "a defense that places the defendant at the *relevant time* in a different place than the scene involved *and so removed therefrom to render it impossible for him to be the guilty party.*" *Commonwealth v. Whiting*, 409 Pa. 492, 498, 187 A.2d 563, 566 (1963). (Emphasis added). *Accord Commonwealth v. Wade*, 501 Pa. 331, 334, 461 A.2d 613, 614 (1983). Accordingly, because the two witnesses were unable to specify

"the relevant time" frame during which they were in appellant's company, no alibi defense would have been established without appellant's testimony. *Id.*

We note also that the appellant's prior record for robbery was the "same crime for which appellant was being tried." *Commonwealth v. Williams,* 273 Pa.Super. 389, 392, 417 A.2d 704, 705 (1980). As such, appellant's conviction arguably "contained an inherent suggestion that appellant had a propensity to rob." *Id.*

Third, the majority erroneously concludes that "the Commonwealth did not have an alternative means of directly impeaching the credibility of appellant, or of cross examining him upon the presentation of his alibi defense." At 10. However, the majority overlooks two significant aspects of the prosecution's case: (1) that appellant denied *ever* being in the store after he was advised of the fingerprint evidence by the detectives, and (2) that appellant previously had told these same detectives that he had been in the store five to ten months before the robbery. At 5 ftn. 3. If believed, this testimony would have impeached appellant's credibility. More importantly, the store manager as an eyewitness to the crime also contradicted the appellant's version of the facts.

In view of the above, "it was important that appellant have an opportunity to testify." *Commonwealth v. Williams,* 273 Pa.Super. at 393, 417 A.2d at 706. In fact, the only evidence in the appellant's favor was his denial of involvement in the crime. In view of the overwhelming evidence of guilt, the prosecution had no need to resort to evidence of the prior conviction.

The majority correctly cites *Commonwealth v. Roots, supra,* in the appropriate form; however, a review of the substance of the decision reveals that the majority today only pays lip service to the *Roots* criteria. Hence, my dissent.